The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Alright, thank you. You may be seated. What, few of you there are left now? Alright, we're ready to hear argument in our next case. May it please the Court, my name is Lisa Loresh on behalf of the appellant Joshua Riley. The District Court erred in this case when it denied Mr. Riley's intent to suppress his unmerandized custodial statement to his probation officer. It was Mr. Riley's probation officer that had him arrested and then chose to interrogate him while he was in custody about something that he hadn't been arrested for, about distribution of methamphetamine. Mr. Riley had Fifth Amendment rights despite the fact he was on supervised release and despite the fact that he was in custody. Can I stop you there? I was going to get to this later, but you raised it here. Why was he in custody for Miranda? I mean, under how and lots of other cases, merely the fact that you're detained doesn't mean you're in custody for Miranda purposes. There has to be a meaningful change from the normal trappings of detention for you to be placed into custody. Otherwise, you know, every inmate would be, you know, in custody for Miranda purposes. So why do we think he was in custody here when he's, you know, in jail, admittedly, but he shows up in a room with his probation officer? What about that suggests custody for Miranda purposes? Well, Your Honor, I think there's a few factors that make this a custodial interrogation. First, it was never contested in the District Court that he was in custody, but there are significant factors. He's not just in a room at the jail. He's actually been arrested. He can't leave. He can't walk out of that room. But what's different from him and any other inmate, right? That's what the court says and how. There has to be something different between him and every other inmate. The distinguishing factor in this case, Your Honor, is that he's under the obligation to answer all questions of his probation officer truthfully. So it's not just that he's sitting in jail and can't leave. He's being questioned by somebody for whom he has a court-ordered obligation to answer all the questions. But that's Murphy, and the Supreme Court in Murphy says, yes, you have an obligation to answer parole questions honestly, but that doesn't make it inherently coercive. That's right, because the questioning in Murphy was very different than the questioning here. In Murphy, Your Honor, the parties arranged a time to meet, and they met at the probationer's office. The probationer, or in that case, Mr. Murphy, could have walked out the door, and the Supreme Court carefully exempted this exact circumstance from its decision in Minnesota v. Murphy, where it said, we are not addressing a custodial interrogation. Right, but that just goes back to the earlier question of why we think he was in custody for Miranda. I get that he's incarcerated, but merely being incarcerated doesn't make you—I mean, that's a little play on words, I get— but doesn't make you in custody for purposes of Miranda. That's the Supreme Court's decision and how. What I can't understand is what makes this guy different from your average pretrial detainee at this particular jail such that we would find him to be in custody under the Fifth Amendment. Well, I think it's the combination, Your Honor, of the fact that he's in jail and that the questioner in this case is his probation officer and that Mr. Riley has a condition of a supervised release that requires him to answer all those questions truthfully. So it's the combination, Your Honor. It's both the condition— But those are the only two—I mean, that's what we're looking at. I think that's right, but to the extent that that ends up being critical in this Court's analysis, the District Court never made any findings of fact in this case about whether or not he was in custody. The District Court merely found this wasn't a question he could even entertain because of the Court's previous decision in Armstrong. So there's been no factual findings about whether Mr. Riley was actually in custody or not. So to the extent that that would be critical, this Court should remand and ask the Court to make those considerations. And it's important because the District Court was wrong to find that Armstrong was determinative in this case. Armstrong is distinguishable from these facts in several different ways. First, we're talking about a different constitutional right, a Fifth Amendment right, not a Fourth Amendment right. We're talking about a different interrogator. You'd agree that nothing in Armstrong suggests that that difference would matter. In fact, the language of Armstrong—you may call it dicta, but the language of Armstrong doesn't turn at all on the nature of the right. I disagree, Your Honor. While the word Fourth Amendment doesn't appear in Armstrong, words Fourth Amendment do not appear, the inherent question in Armstrong is a balancing test. It's looking at Scott to balance, is the cost of applying the exclusionary rule worth the benefit? And inherent in determining what the costs are, the most significant input in that case was, well, is Fourth Amendment evidence inherently reliable? And that's very different from the kind of evidence we see in the Fifth Amendment context. Well, and the inherent issue in the Fifth Amendment context, for me, is whether or not the challenge statements were admitted against him in a criminal proceeding. And I don't think a revocation proceeding is a criminal proceeding. It's certainly not a criminal proceeding, Your Honor. But since this Court's prior decision in Armstrong, there have been significant additional protections afforded to criminal defendants in the revocation context. This Court in Doswell recently decided that you have Sixth Amendment, a form of Sixth Amendment rights to confront witnesses. Well, Doswell, you say Sixth Amendment. Doswell turns on Rule 32.1. It doesn't turn on the Sixth Amendment issues, right? It analyzes the text of Rule 32.1. It analyzes the text of Rule 32.1, Your Honor, but also finds a due process concern that creates a confrontation clause right in that context. So there is Rule 32.1. They talk about the confrontation clause? They talk about due process, Your Honor, and they reference the confrontation clause. They don't specifically find the confrontation clause right, but due process concerns that require confrontation. What they say, though, is that, I mean, maybe this doesn't matter, but they say, listen, due process requires something, and that's manifested in Rule 32.1. Here's what Rule 32.1 requires, right? Their holding is not based on a constitutional decision. It's a rules-based decision. I think it's both, Your Honor. I think it's both. I think that Rule 32.1 encompassed a constitutional right. It encompassed Rule 32.1 was promulgated because of due process concerns, and that Doswell essentially affirmed that reading of Rule 32.1, despite the government's arguments in that case, similar to today, that this is going to fundamentally change the nature of supervised release, that adding these rights into a supervised release violation hearing makes it like a criminal trial. It's still different than a criminal trial, Your Honor, but at this point someone does have the right to confront witnesses, and that Sixth Amendment- At least sometime, right? Sometimes. Well, if they raise the objection, at least, Your Honor. But I do think that the fact that you have the right to confront witnesses is important to consider because that's about testimony. We want people to confront the witnesses against them so you can actually- so a court can judge how reliable the evidence is. That goes to the heart of the Fifth Amendment concern. Is testimony, is a confession, reliable or not? And that's why Fifth Amendment input into Armstrong is different, but there's another reason I think Armstrong is distinguishable, and that's the nature of the interrogator. The Armstrong case, which relied on the Scott decision, had to do with law enforcement officers, and Armstrong and Scott found, well, you know, law enforcement officers are already deterred. They already have an incentive to protect constitutional rights because they know if they violate those rights, the evidence can't come in at a criminal trial. There's no deterrence here for a probation officer, such as Mr. Riley's probation officer. If he violates constitutional rights, there's no stick. He can go ahead, violate those constitutional rights, and the impact in this case is significant. He still has an employer, right? He has an employer on her, but the impact for Mr. Riley is to go from 4 to 10 months to 24 to 30 months. And why should the probation office, unless this court were to intervene and to reverse, why should the probation office writ large find that there's any problem with this case? The alternatives here for the probation office were very simple, and if this court were to reverse, it would be very simple for how the probation office could proceed. First, just question Mr. Riley before you have him arrested. That's a small step. Second, if you're going to question him in custody. You're suggesting that the probation officer not utilize the marshals to perform arrests, right? Well, of course they can choose to go that route, but in this case, the probation officer could have also arranged a consensual meeting like the meeting in Minnesota versus Murphy and just asked Mr. Riley the questions in a non-coercive environment where Mr. Riley, like Mr. Murphy, could have locked out the door. The other alternative is to simply Mirandize him. That's a low-cost solution to a problem. It's not like going to get a warrant from the magistrate, which takes a lot of time, and other actors. All he would have had to do was say a few simple sentences. Or the third option is that if a probation officer wants to go into custody and interrogate somebody and elicit responses, we just can't use that to prove the violation at the supervised release hearing. Just get other evidence to do that. So it's not as if this would handicap probation, and the deterrence effect here is important because unless the court reverses in this case, the message sent to probationers and supervisees everywhere is that this really isn't a relationship of trust. Even though we're constantly telling people on supervised release it's about the trust of the court. You're not being punished because of what you did. You're being punished because you violated the court's trust. Well, the incentive created here is to lie. The incentive for Mr. Riley and every supervisee to come after him will be to lie and to not truthfully answer the inquiries of their probation officer, and that's an important reason the exclusionary rule is worth the cost in this case. It's worth the cost because the evidence isn't inherently reliable, like physical evidence, and because unless the court acts, probation officers can be sort of deputized as law enforcement officers to go in and ask questions of every single person about anything they want to, and they can be used to violate that person. Well, there's a different question about anything they'd like because we could have a different discussion about if this evidence was being used in a criminal trial. So probation officer shows up, says, hey, did you kill your wife yesterday? I know you got caught testing positive for drugs, but did you kill your wife? Yes, I killed my wife. We can have a separate discussion about whether that could be used in a criminal trial, but this is simply the probation officer performing his function of informing the court when violations have happened, and the probationer is required to provide those answers. Well, Your Honor, I think there's a distinction. The moment that Mr. Riley is arrested on the probation officer's petition, the probation officer's role changes. He's not asking him questions about whether he distributed methamphetamine to get him into a treatment program for drug dealers. He's asking him whether he distributed methamphetamine so he can increase the guideline range, in this case, from 4 to 10 months to 24 to 30 months. To provide truthful information to the court, right? That's what you're saying. So the probation officer's desire to provide truthful information to the court is what you think needs to be deterred by the exclusionary rule. Your Honor, it's the opposite, I think, if I'm understanding you. It's to incentivize the probationer to provide truthful information to the probation officer because otherwise they're incentivized to lie. That's correct, Your Honor. That's the incentive structure that I think this court should protect because the primary role of the probation officer is not to investigate offenses, Your Honor. Are there any examples where the exclusionary rule has been applied for the purpose of incentivizing defendants' or probationers' actions? I mean, generally we think of the exclusionary rule in every case I can imagine is focused on the actions of the law enforcement or government official, right? Not trying to figure out, like, what this is going to do to crime. Well, that's the same incentive the court would be providing here. You're incentivizing the probation officer to respect constitutional rights and to not turn into an interrogator, which that impacts the overall nature of supervised relief, which is something the court can consider with the exclusionary rule's balancing test. Is it worth the cost of applying the rule? Yes, it is because we've got constitutional rights at issue and because we have a concern about the nature of the asker, a probation officer, who does not have a constitutional duty to investigate new offenses. They have constitutional duties, sorry, statutory duties to report about behavior to the judge, and they have statutory duties to help rehabilitate. But they're not like law enforcement officers, and they shouldn't be. There should be a distinction where they're not tasked with investigating every possible offense a supervisee may have committed. And I think that that role of the probation officer is relevant for the court to consider here. And so this court would not have to find a huge exception to the Armstrong case. The court only needs to find that on the limited facts here, where you have a probation officer as interrogator asking statements in custody, that the Fifth Amendment exclusionary rule should apply because that's the only deterrent that would apply. And I think there's another issue that I've raised in my briefs, which I'll just address quickly, which is the separate issue about whether assuming the statement came in appropriately, that's enough to corroborate Mr. Riley's grade A violation that he distributed methamphetamine. And I would suggest that the reasoning from the opera decision of the Supreme Court and the other warnings against just confessions alone that we see from the Supreme Court in Escobedo versus Illinois, that a statement alone, a confession alone, should not be enough to corroborate someone's, even under the preponderance of the evidence standard, that someone committed a new and separate offense. Some other evidence should be required. And the district court was wrong to find no corroboration was required. And it was also wrong to find that even if corroboration was required, that this offense was corroborated, simply because the confession was oral and then also that the defendant, in this case, initialed next to the probation officer's notes of his confession. And the government's suggestion in its briefs now, although there's other corroborating evidence, that he had possessed methamphetamine and that's corroborating, or he had previously distributed methamphetamine and that's corroborating, those are new facts that the district court didn't find. And they also wouldn't corroborate Mr. Raleigh's offense, a new offense, of distributing methamphetamine at the time that the probation officer was questioning him. So that's a separate, independent issue that the court should consider. Let me ask you about OPPRA. Assuming, in a very hypothetical world, that OPPRA applied in a supervised release setting, isn't the OPPRA the idea that you have to corroborate the action that took place? You don't have to corroborate the mental state, because the mental state is really difficult to corroborate. And so what we've got here is a possession with intent to distribute. The possession is well corroborated, right? That's the drugs found in the car. What you claim is not corroborated is merely the mental state. But OPPRA stands for the idea that as long as you're corroborating the actus, you don't have to get to the men's. Yes, and if I may answer your question, despite my time expiring. I believe that the district court found that the offense of distribution occurred, not possession with intent to distribute. And so we're not talking about a mental state. We are talking about the actual act of distribution. Mr. Riley's confession was that he had distributed, not that he possessed with the intent to distribute. And the court found that there was no requirement to corroborate that actual criminal act and that his statement alone was sufficient, and that's wrong, I believe, under OPPRA. Thank you. Thank you. All right, Mr. Hoffman. Good morning. Grayson Hoffman for the United States. May it please the court. One of the central arguments that the appellant made in his briefs and just made has already been rejected. It's already been rejected by the Supreme Court in Scott. The argument is that we need the exclusionary rule in circumstances like this because the probation officer turns into, functionally, a police officer, puts on his investigation hat, and they're one and the same. That argument was squarely rejected by the Supreme Court in Scott. In fact, if the court looks at page 375 in the Scott opinion, you'll see that that was actually the dissent's argument in Scott, that the parole officer turns into, to use my friend's language just now, an interrogator. And, of course, the majority of the Supreme Court in Scott rejected that. I think it's a point worth emphasizing. The language that the Supreme Court emphasized there was that, I believe it's at page 368, Scott said that it would be unfair to assume that the probation officer was not neutral, vis-a-vis a police officer. The Supreme Court in Scott went on to say that the interests of the probation officer and the probationer that he or she is supervising are actually more aligned. They're not hostile, again, vis-a-vis the police officers. So that argument has already been rejected. And if I may, I'd like to just take a few moments to respond to a few of the other arguments. And I believe, as Judge Thacker noted and Judge Richardson as well, Miranda only applies when two conditions are present. One, when we have a custodial interrogation, and two, when the statements are used in a subsequent criminal proceeding. Miranda does not apply where the statements are to be used in a non-criminal proceeding, i.e. here, a supervised release revocation here. And I would like to direct the Court's attention to some language in Murphy that I believe really reinforces the government's argument on this point. And that is, this is footnote seven, just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer. Neither is the privilege against compelled self-incrimination available to a probationer. Let me change the subject slightly for you. Yes, Your Honor. Because you make the point, you said there are two different things. It needs to be custodial and it needs to be a criminal proceeding. I raised the custodial issue with your colleague. She says not objected, not raised, not an issue. Do you agree that that's something that, to the extent he was not in custody, the government has not relied on that grounds for rejecting his claim? Yes, if I'm understanding the Court's argument correctly, we have never argued, we don't argue here and we didn't argue there, that he was not in custody. That was not an issue that was there. And I think, of course, the Supreme Court has said we're supposed to engage in the balancing act, kind of the costs versus benefits in terms of applying exclusionary rule, applying in which here would be Miranda. I'll emphasize for the Court here that if the Court forces Miranda and forces exclusionary rule into supervised release revocation hearings, there will be blowback. Understanding, of course, that the purposes of supervised release are very different. They serve the purposes of rehabilitation, reintegration of the probationary society and protection of the public. The lifeblood, the bedrock of supervised release is the flow of information, the communication by the probationer to the Court through the probation officer. If we inject Miranda in the exclusionary rule here, it's going to stem that flow of information. I think we're going to have probation officers, excuse me, we're going to have probationers deciding to not answer questions upon hearing a reading of their Miranda rights, which is going to, in effect, it's also going to have another blowback where they're going to be revoked for failing to comply with the conditions that require them to answer questions. And then I think it will give rise to additional litigation as to whether there was Miranda, exclusionary rule and the different resources. So suffice it to say that the costs, the government's position is, will be tremendous if this Court forces Miranda and the exclusionary rule. It really is a kind of a square peg, round hole problem. I would also like to address the appellant's argument that this Court should narrowly interpret Armstrong to only apply to violations of the Fourth Amendment. And it's problematic for numerous reasons. The first reason it's problematic is when you just look at the plain language of this Court's holding in Armstrong. It says no exclusionary rule in supervisory release hearings, period. There's no limitation at all. If the Court agrees and goes forward with the appellant's argument that Armstrong should be limited, it's going to be treating the rights of the probationer in two different ways going forward. That is, the Court will be protecting the Fifth Amendment rights of the probationer because the exclusionary rule would apply. But then under Armstrong, it would not be protecting the Fourth Amendment rights of the probationer, consistent with Armstrong. So now, unavoidably, you would end up with this bifurcated regime where, again, the law is protecting some rights of the probationer, not protecting other rights of the probationer, and it's just tough to imagine that that was this Court's intent when it crafted Armstrong. Also proceeding forward under that narrow interpretation of Armstrong… Is there any sort of reference to or support for her argument that it turned on the reliability of physical evidence compared to the reliability of confessions? I do not recall any of that reasoning in either of those cases, Your Honor. And in fact, I think that that argument is flawed because I think we can all imagine circumstances where physical evidence may not be that reliable as to one defendant or another. For example, law enforcement goes into a house where there's five people and there's a bag of cocaine sitting on the table. Well, we've got the bag of cocaine, but whose is it? So I think it is flawed to categorically argue that a statement is more reliable than physical evidence. We also think we have less concern… To the extent we have concerns about false confessions, the primary concern about those is in a jury context, not in a judge context. Who sees a number of confessions is much more versed with those issues. That's correct, Your Honor. Also there, the burden of proof is much higher. The burden of proof here in the supervisor release revocation context is much lower. It's only preponderance of the evidence. Another problem with narrowly interpreting Armstrong as the appellant asked this court to do is it will fly directly in the face of established Supreme Court exclusionary rule jurisprudence in cases like Mapp v. Ohio and Boyd. And Mapp, quoting Boyd, I believe, explained… There was this interesting historical analysis about the Fourth and Fifth Amendment reflecting that the two amendments are very, very similar and they're closely related. And I believe the language was they cast light upon one another and that they were founded kind of to protect the same rights, which was kind of security and property of the citizenry. So if the court proceeds with the appellant's interpretation of Armstrong, it will also fly in the face of those points made in those historic Supreme Court cases. And again, I've already explained the problems with kind of the bifurcated regime we would end up in. And I think the final point that I would make on this particular issue, I believe, is a point that Judge Richardson was making when the appellant's counsel was making the argument. It's true. Doswell and even Ferguson, those cases didn't create new rights. They didn't extend new rights. Those were cases about whether the district court had properly applied and interpreted Rule 32.1. Those were reliability and evidentiary cases. Appellant makes this argument that there's this momentum, this groundswell to make supervised release revocation hearings more akin to trial and have trial-like protections, and that's just… it's just not correct. Rule 32.1, as the court knows, was initially passed. It was created, I believe, in 1979, 1980. Shortly before that, in the 70s, was Morrissey v. Brewer, the Supreme Court case, and that was the, I believe, the first court that said the Confrontation Clause rights may apply in the context of supervised release revocation hearings. Not shall, but may. It's this limited protection. And that's kind of the theme that we see in all of these cases, is that there's a limited protection, limited due process for probationers vis-à-vis criminal defendants. In all these cases, we hear that, and you read that the constitutional protections for probationers are less than they are for those that are not in probation, and for good reason, for all of the costs that I alluded to a moment ago. So if there are no other questions from the panel on Issue No. 1, I will move to OPPER. The government's argument here, of course, is that the district court got it right when it decided that OPPER did not apply and does not apply to supervised release revocation hearings. That, of course, is because it's in a very different context. The burden of proof is much higher than it is here in supervised release. And our alternative argument in OPPER is that even if OPPER does apply, there was sufficient corroboration in the record before the court at the time to satisfy the OPPER requirements. So if there are no additional questions from panelists, I'll conclude my argument. Thank you very much for your attention. Thank you. I want to start by addressing Minnesota v. Murphy, which Mr. Hoffman and the government have suggested means that the probationer has diminished constitutional rights because of the fact that he's on probation or supervised release. But that is not what Minnesota v. Murphy held. In fact, Minnesota v. Murphy affirmed that someone on probation, in the equivalent here being supervised release, still has constitutional Fifth Amendment rights that apply. Minnesota v. Murphy turned on the fact that that defendant was not in custody. And that's a crucial point here. Mr. Hoffman and the government say that someone has less rights when they're on supervised release, but they don't have less Fifth Amendment rights. They don't have a diminished expectation about self-incrimination. Because Mr. Riley was in custody, because he had Fifth Amendment rights, this court only needs to decide, well, is the fact that this statement's being used in a supervised release hearing determinative versus a criminal trial? And it shouldn't be determinative because of the fundamental balancing test that the court has to apply when deciding whether the exclusionary rule would be appropriate. And that balancing here is different than the balancing in Armstrong. The government suggested that Armstrong doesn't really look at the nature of the underlying constitutional right, but I would disagree. Armstrong quotes from Scott, quote, the cost of excluding reliable probative evidence are particularly high in the context of parole revocation proceedings. And there's no case I'm aware of that suggests that confessions are inherently reliable. In fact, cases suggest the opposite. So to answer the question I put to him, give me the best site or support in Armstrong or Scott for the idea that it turned in any way on the reliability of physical evidence as opposed to confession evidence. Well, Your Honor, it's simply that the court, as I've quoted, looked at the fact that the evidence it was considering in Armstrong and the evidence it was considering in Scott was reliable and probative. And I'm arguing that Fifth Amendment, there's no case law that supports the idea that Fifth Amendment confessions, confessions that implicate the Fifth Amendment are inherently reliable. And so that's the distinction. And I also think the other distinction, as I mentioned before, for Armstrong, has to do with the nature. I'm sorry. I'm going to just say, so in essence, it turns on the belief that confessions are inherently unreliable. They're certainly not reliable, inherently reliable. Whether they're inherently unreliable, I don't think I can cite to support for that, but they're not inherently reliable. There's no case that has suggested we don't need at least something else to corroborate a confession. There's that concern because of the fact that they aren't inherently reliable. And I'd also just note that on this very issue, the tension that a probationer feels upon being questioned by a probation officer and the implication of these Fifth Amendment rights provoked the United States Sentencing Commission two years ago to actually change the standard condition of supervised release. That condition applied in Mr. Riley's case used to require someone to answer all questions of their probation officer truthfully. Now that language all has been taken out and the commentary notes of that amendment specifically note the Fifth Amendment tension that was created by that prior condition. And that's also relevant for this court to consider. And it's also another way to cabin how significant the alleged sea change would be for applying the exclusionary rule in this context. This court can limit the application of the exclusionary rule to just circumstances such as Mr. Riley faced. He's required to answer all questions truthfully. He's in custody, and he's being interrogated by his probation officer. And I would suggest there's not going to be some hindrance to the flow of communication between the probationer and a probation officer or a supervisee and probation officer if the line is custody. Custody is clear. It's a line we rely on in every other circumstance. At least it's clear in this case, Your Honor. Not so sure it's as clear as you think it is. It may not be argued. That doesn't mean it's clear. Those are different issues. That's a fair point, Your Honor. But I think custody is a line, and it's a line that the court relies on in other contexts, and it's a line that could be relied on here to limit the impact of the decision. So there's no further questions. Thank you, Your Honors. Thank you very much. Thank you. We'll come down and greet counsel and go to our next case.
judges: Stephanie D. Thacker, Julius N. Richardson, William B. Traxler Jr.